UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DEO DJOSSOU**<br>4105 Clyde Lane<br>White Plains, MD 20695<br>   Plaintiff,<br><br>v.<br><br>**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**<br>1200 First Street, NE<br>Washington, D.C. 20002<br><br><br>**SERVE**:<br>**ANTOINETTE S. MITCHELL,**<br>**SUPERINTENDENT OF THE DISTRICT OF COLUMBIA PUBLIC SCHOOLS**<br>1200 First Street, NE<br>Washington, D.C. 20002<br><br>**BRIAN L. SCHWALB, ATTORNEY GENERAL FOR THE DISTRICT OF COLUMBIA**<br>400 6th Street NW<br>Washington, D.C. 20001<br><br>**MURIEL BOWSER, MAYOR OF THE DISTRICT OF COLUMBIA**<br>1350 Pennsylvania Avenue, NW<br>Washington, DC 20004 |  Case No.<br><br>JURY TRIAL DEMANDED |

# COMPLAINT

Plaintiff, Deo Djossou, by and through undersigned counsel, hereby makes the following allegations against the Defendant, the District of Columbia Public Schools ("DCPS").

## NATURE OF THE ACTION

1. This action is brought to redress unlawful employment discrimination, harassment, and hostile work environment on the bases of color, race, sex, disability, and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq* ("ADA"); and the D.C. Human Rights Act, D.C. Code § 2-1402.11 *et seq.* ("DCHRA"), and in support thereof Plaintiff states as follows:

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 as this action involves federal questions regarding the deprivation of Plaintiff's rights under Title VII and the ADA. This Court also has supplemental subject matter jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's claims under the DCHRA. The Court also has diversity subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) as the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states

3. This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq*. and the D.C. Human Rights Act, D.C. Code § 2-1402.11 *et seq*.

4. The Court has personal jurisdiction over Defendant District of Columbia Public Schools because DCPS is domiciled in the District of Columbia and maintains its principal place of business and headquarters at 1200 First Street, N.E., Washington, D.C. 20002. As a resident

of this jurisdiction, DCPS's domicile creates a direct and substantial connection with the District sufficient to subject it to the general and specific jurisdiction of this Court.

5. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant resides in the District of Columbia and the acts giving rise to the claims occurred within this District.

## PARTIES

6. Plaintiff Deo Djossou is a black, African American, male with a disability employed by DCPS since approximately 2017.

7. Defendant District of Columbia Public Schools is a government agency headquartered in Washington, D.C., and is an employer within the meaning of TITLE VII, ADA, and DCHRA.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. Plaintiff has exhausted his administrative remedies.

9. Plaintiff filed charges with the Equal Employment Opportunity Commission ("EEOC") which set forth the same allegations contained in this complaint and asserted violations to support claims under TITLE VII, ADA, and the DCHRA for unlawful color, racial, sex based and disability discrimination, and unlawful retaliation for asserting a claim for violations of TITLE VII, ADA, and the DCHRA.

10. After more than 180 days, the EEOC issued Plaintiff a Notice of Right to Sue on August 29, 2025. See Exhibit A.

11. Plaintiff's suit is timely filed with this Court.

## FACTUAL ALLEGATIONS

**A. Esteemed Record of Service**

12. Mr. Djossou was a highly respected Dean of Students, responsible for ensuring a safe and productive school experience for students at Frank W. Ballou High STAY School (Ballou STAY) from 2017 until his wrongful termination in May 2024.

13. Throughout his tenure, he earned excellent performance evaluations and was repeatedly recognized for his positive impact on the students' educational environment. He received accolades and praise from the staff and administration for his contributions to the school and its' at-risk population.

14. Until 2021, he worked under supervisors who valued his expertise and experience, until such time as Principal Bumpass became Mr. Djossou's supervisor.

**B. Improper Disclosure of Medical Information**

15. Mr. Djossou was diagnosed with cancer in 2021 and underwent surgery in 2022, without any support from his supervisor, Principal Bumpass.

16. Mr. Djossou advised the staff of Ballou STAY of his medical condition but refrained from advising the student body.

17. On September 26, 2023, a student made Mr. Djossou aware that the students knew of his cancer diagnosis, by stating "Shut the [expletive] up. You should be concerned about your health and that cancer of yours."

**C. Change in Management and Pattern of Hostility**

18. Upon her arrival at Ballou STAY, Principal Bumpass immediately began making comments about Mr. Djossou being a "big black male" and that he is "intimidating" and "not allowed to talk with his hands." Principal Bumpass's disclosure of Mr. Djossou's cancer diagnosis was just another targeted form of harassment.

19. Principal Bumpass has continuously discriminated against Mr. Djossou and deliberately created a hostile work environment for the specific purpose of removing Mr. Djossou from his position as Dean of Students.

20. Since filing his Formal Complaint with EEOC on February 23, 2023, Principal Bumpass has continuously refused to provide professional support to Mr. Djossou. She has allowed other staff members to disrespect Mr. Djossou, has interfered with his ability to do his job by interfering with the manner in which he communicated with and held staff accountable for their actions, failed to communicate with Mr. Djossou, made capricious changes to his job duties, failed to provide him with requested training and failed to protect Mr. Djossou from threatening and unsafe conditions in the work environment to the point of maliciously creating unsafe situations to the detriment of student safety.

21. Mr. Djossou was made to fear for his safety and feel isolated from the Ballou STAY team.

22. On February 13, 2024, Mr. Djossou was asked to take students on a field trip to Philadelphia. Aware of the level of need for the students required for their safety, Mr. Djossou requested additional support from Principal Bumpass in the form of more staff support. However, despite having 23 students, Principal Bumpass denied any additional staff from assisting Mr. Djossou, ultimately leaving Mr. Djossou as the only adult chaperone.

23. Additionally, since filing his Formal Complaint, Principal Bumpass has been consistently aggressive with Mr. Djossou, often hostile and cursing at him in front of other staff and allowing the same from staff.

24. Mr. Djossou believes that this hostile behavior is encouraged by Principal Bumpass. In a climate meeting in March 2024, a staff member cursed at Mr. Djossou. Principal

Bumpass' response to the unprofessional behavior was to chuckle and say "I thought y'all were friends". Mr. Djossou responded "… well, if your supervisor was in the meeting…" to which Principal Bumpass interrupted to say "What the [expletive]? Who are you talking to? I can say what the [expletive] I want to" out loud to Mr. Djossou in front of staff.

**D. Elimination of Position and Denial of Professional Opportunities**

25. On March 22, 2024, Principal Bumpass told Mr. Djossou that his position would no longer be needed the following year and that it would be eliminated. He received official notice of the termination of his position on May 6, 2024.

26. The elimination of Mr. Djossou's position is in direct retaliation for Mr. Djossou's filing a Formal Complaint of discrimination, continued communication with Principal Bumpass about her discriminatory and hostile treatment of him, and Principal Bumpass' discriminatory beliefs and behavior due to Mr. Djossou's color, race, sex and disability.

27. Principal Bumpass created a new position, Assistant Principal of Climate, which encompassed the climate control role that was a part of Mr. Djossou's position. Mr. Djossou was highly qualified for the position based on the original posted position description.

28. When Principal Bumpass learned of Mr. Djossou's interest in the Assistant Principal of Climate position, the position description was changed in such a manner that made Mr. Djossou no longer qualified for the position.

29. On February 6 and April 19, 2024, Mr. Djossou was also denied training opportunities which would have made him more effective in his existing role of Dean of Students. However, Principal Bumpass discouraged Mr. Djossou from taking those trainings, knowing her intention was to terminate his position.

30. Despite her knowledge of her intent to terminate Mr. Djossou's position, Principal Bumpass failed to offer any of a multitude of open positions within DCPS that Mr. Djossou was well qualified for. This was done in retaliation for Mr. Djossou filing a Formal Complaint of discrimination, which is protected activity under TITLE VII, and the ADA.

31. It is evident that Principal Bumpass' allowance and encouragement of professional disrespect and misconduct from staff members, reduction and overall change of Mr. Djossou's duties, lack of support and intentional placing of Mr. Djossou in unsafe and unsupportive environments, denial of professional advancement for Mr. Djossou while in his role and leading up to his wrongful termination all created a hostile work environment for Mr. Djossou and stem from discrimination, retaliation and reprisal for filing his Formal Complaint against Principal Bumpass and speaking out against her discriminatory behaviors.

## STATEMENT OF CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### COLOR, RACE, AND SEX DISCRIMINATION (TITLE VII, 42 U.S. Code § 2000e-2.)

32. Plaintiff hereby incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

33. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S. Code § 2000e-2 ("Title VII") makes it unlawful to discharge or otherwise discriminate against any individual based on color, race, and/or sex with respect to compensation, terms, conditions, or privileges of employment.

34. Defendant is and continues to be an "employer" within the meaning of Title VII.

35. Plaintiff was an "employee" within the meaning of Title VII.

36. Plaintiff, who is black, African American, and male, is a member of the classes of citizens protected by Title VII.

37. Defendant was aware of Plaintiff's color, race and sex which was readily apparent.

38. Defendant knowingly and intentionally discriminated against Plaintiff because of his color, race and sex.

39. Defendant discriminated against Plaintiff because of his color, race and sex, including by:

- Denying him the support provided to staff members of other colors, races, and sexes;
- Changing his job duties;
- Subjecting him to disparaging comments about being "intimidating" and declaring that he was not allowed to talk with his hands; and
- Terminating his employment under pretextual grounds.

40. Defendant's actions were willful and in reckless disregard of Plaintiff's rights under Title VII.

41. As a result, Plaintiff has suffered lost wages, benefits, emotional distress, and other damages.

42. The effect of the practice described above has been to deprive Plaintiff of equal employment opportunities, and to affect his status otherwise adversely as an employee because of his color, race and sex.

43. Plaintiff is entitled to participate in and be given the benefits of employment.

44. Defendant was responsible for ensuring that Plaintiff was able to work void of discrimination.

45. But for Defendant' discrimination and harassment against Plaintiff, he would have advanced in his career.

46. Defendant is liable for the acts and omissions of its agents and employees.

47. The discriminatory employment practices and other acts or omissions of Defendant and Defendant' agents, supervisors, and employees reflect Defendant' reckless, willful, and wanton indifference or hostility to Plaintiff's protected employment rights and status, directly and proximately resulting in such damages as may be proven at trial, including but not limited to lost income and benefits; lost employment opportunities; psychological, emotional, and mental anguish; distress, humiliation, embarrassment, and degradation; pain and suffering; and Plaintiff's attorney's fees in bringing this action.

## SECOND CLAIM FOR RELIEF
## RETALIATION IN VIOLATION OF TITLE VII (42 U.S. Code § 2000e-3)

48. Plaintiff hereby incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

49. At all relevant times, Plaintiff was an "employee" within the meaning of Title VII, and Defendant was an "employer" within the meaning of Title VII.

50. Plaintiff engaged in protected activity by filing a Formal Complaint with the EEOC, complaining internally about discrimination and harassment and by opposing management's unfair treatment of him due to his color, race and sex.

51. As outlined above, Defendant took actions in retaliation for Plaintiff's protected activities, including subjecting him to heightened scrutiny, minimizing his role as a member of the Ballou STAY educational team and ultimately terminating his employment under false pretenses.

52. As a direct and proximate result of Defendant's retaliation in violation of Title VII, Plaintiff has suffered, and continues to suffer monetary and economic damages, including, but not limited to, loss of past and future income, compensation, and benefits, and Plaintiff's attorney's fees in bringing this action.

### THIRD CLAIM FOR RELIEF
### DISABILITY DISCRIMINATION
*(Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.)*

53. Plaintiff hereby incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

54. The Americans with Disabilities Act ("ADA") prohibits employers from discriminating against individuals with disabilities.

55. At all relevant times, Plaintiff was a qualified individual with a disability within the meaning of the ADA. Plaintiff's cancer diagnosis and treatment substantially limited major life activities including working, performing daily tasks, concentrating, eating and the functioning of his immune system.

56. Defendant had actual knowledge of Plaintiff's disability sufficient to spread that information amongst the student body.

57. Defendant discriminated against the Plaintiff based on his disability by denying him training opportunities, isolating him from the staff, changing his job duties, inhibiting his career advancement, and terminating his employment.

58. Defendant's conduct violated the ADA's prohibitions on disability discrimination.

59. As a result, Plaintiff suffered economic losses, emotional distress, reputational harm, and other compensable damages.

### FOURTH CLAIM FOR RELIEF
### RETALIATION IN VIOLATION OF THE ADA

**(*42 U.S.C. § 12203*)**

60. Plaintiff hereby incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

61. Plaintiff engaged in protected activity under the ADA by filing a Formal Complaint of disability discrimination with the EEOC and by opposing the Defendant's discriminatory practices.

62. Defendant retaliated against Plaintiff by denying him training, denying him career opportunities, subjecting him to an unsafe work environment, isolating him from staff, subjecting him to a severely and pervasive hostile working environment, and ultimately terminating his employment.

63. The temporal proximity between Plaintiff's protected activity and Defendant's retaliatory acts, combined with inconsistent explanations for his termination, demonstrate causation.

64. As a direct and proximate result of Defendant's retaliation in violation of the ADA, Plaintiff has suffered and continues to suffer lost wages, benefits, emotional distress, and other damages, as well as attorney's fees incurred in bringing this action.

## FIFTH CLAIM FOR RELIEF
### COLOR, RACE, SEX, AND DISABILITY DISCRIMINATION
**(*District of Columbia Human Rights Act, D.C. Code § 2-1402.11 et seq.*)**

65. Plaintiff hereby incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

66. At all relevant times, Defendant was an "employer" and Plaintiff was an "employee" within the meaning of the DCHRA.

67. The DCHRA makes it unlawful for an employer to discriminate against an employee based on color, race, sex, and/or actual or perceived disability in any term, condition, or privilege of employment.

68. Defendant knowingly and intentionally discriminated against Plaintiff on the bases of his color, race, sex and disability, by including but not limited to:

- Denying him training;
- Subjecting him to harassment and heightened scrutiny;
- Reassigning his job duties;
- Undermining his authority and reputation; and
- Terminating his employment under pretextual grounds.

69. Defendant's conduct was willful and in reckless disregard for Plaintiff's rights.

70. As a direct and proximate result of Defendant's retaliation in violation of DC anti-discrimination laws, Plaintiff has suffered, and continues to suffer, monetary and economic damages, including, but not limited to, loss of past and future income, and Plaintiff's attorney's fees in bringing this action.

**WHEREFORE,** Plaintiff respectfully requests:

A. Appropriate declaratory and equitable relief;

B. Compensatory and consequential damages, including damages for emotional distress, loss of reputation, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

C. Backpay to include salary increases and bonuses;

D. All economic losses on all claims allowed by law including back pay with prejudgment interest, lost benefits, including stock benefits, and other damages for lost

compensation and job benefits and other monetary losses suffered by Plaintiff in an amount to be determined at trial;

E. An award of compensation for past and future pecuniary losses resulting from Defendant's unlawful actions described above in amounts to be determined at trial;

F. An award of Plaintiff's litigation costs and expenses in this action, including described above in an amount to be determined at trial; and

G. Any further relief that this court deems just and proper, and any other relief as allowed by law.

Respectfully submitted this 26th day of November, 2025,

*/s/ Theresa Kraft*
Theresa Kraft
**WTK & Associates, LLP**
DC Bar No. 1741565
1629 K Street, NW, Suite 300
Washington, DC 20006
202-508-3648 (office)
202-521-9803 (fax)
tkraft@wtk-law.com

*/s/ Rashiida Clark*
Rashiida Clark
**WTK & Associates, LLP**
DC Bar No. 90017797
1629 K Street, NW, Suite 300
Washington, DC 20006
202-508-3648 (office)
202-521-9803 (fax)
rclark@wtk-law.com
*Counsel for Plaintiff*